MONIES RECEIVED FROM SALE OF LAND — MUST BE USED TO RETIRE BONDS ISSUED TO ORIGINALLY PURCHASE SAID LAND All of the Five Thousand Dollars ($5,000.00) received by the county from the sale of land originally purchased with proceeds from a county bond issue approved for the purpose of acquiring said property, must be placed in the sinking fund for the purpose of retiring the bonds issued for the purchase of said property. The Attorney General has considered your letter of February 24, 1971, wherein you state as follows: "Pursuant to the provisions of 19 O.S. 381 [19-381] — 19 O.S. 387 [19-387] (1961), the Pontotoc County Commissioners called a `public buildings' bond issue on November 8, 1966. The qualified electors of Pontotoc County approved the proposition, thereby incurring an indebtedness of Four Hundred Ten Thousand Dollars ($410,000.00) for the purpose of acquiring sites for and equipping public buildings for county health, public welfare, and vocational rehabilitation, and related facilities — in point of fact, the county's share in a new regional Social Services Center in Ada, Oklahoma. Accordingly, the County Commissioners used a portion of the proceeds from the sale of these bonds to purchase a forty (40) acre tract, a one and twenty-four one hundredths (1.24) acre parcel of which is the subject of this requested opinion. Recently, this 1.24 acre parcel was sold by the County Commissioners for Five Thousand Dollars ($5,000.00), to the East Central Oklahoma Building Authority, a state trust building authority for development of certain aspects of regional social services, and created under the authority of 60 O.S. 176 [60-176] — 60 O.S. 180 [60-180] (1961), as amended, and the Oklahoma Trust Act. The original, proportionate cost to the county of this 1.24 acre parcel was approximately Thirty-seven Hundred Dollars ($3,700.00)." You then ask the following questions: "(1) Must all of the Five Thousand Dollars ($5,000.00) received from the sale of this land be used to retire the aforementioned bonds or otherwise discharge any obligations assumed by the bond issue? "(2) If not, can all or only a portion (for instance, $1,300.00 — the difference between the purchase price and the sale price) of this Five Thousand Dollars ($5,000.00) be used for other governmental purposes?" Article X, Section 16 of the Oklahoma Constitution controls the use of borrowed money by a county, and provides as follows: "All laws authorizing the borrowing of money by and on behalf of the State, county, or other political subdivision of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose." In the first paragraph of the syllabus of Protest of Reid, 160 Okl. 3, 15 P.2d 995 (1932), the Court held: "Article X, Section 16, of the Oklahoma Constitution, is a part of the public policy of the State. By the provisions thereof money borrowed by a city may be used only for the purpose for which it was borrowed." In the fourth paragraph of the syllabus of said case, it was further held: "When a municipal utility, which was purchased, constructed or repaired with borrowed money, is converted into money by reason of a sale of the property, the proceeds of the sale are controlled by the provisions of Sections 16 and 17, Article X, Section 16, Article X, Section 17 of the Constitution and may be used only for the purpose for which the money was borrowed. When the proceeds of the sale are not used for the purpose for which the money was borrowed, they must be used to reimburse the taxpayers." In the body of the opinion of Protest of Reid, supra, at page 6 of the Oklahoma Reports, the Court said: "If not used, an amount equal in value to the amount of all of the indebtedness incurred by the municipality for the purchase, construction, or repair of the same, with all the interest thereon, whether matured and paid or unmatured, must be paid into the sinking fund, and the remains thereof must be paid into the current expense fund, to reimburse the ad valorem taxpayers of the city for the amount of taxes paid by them or chargeable against their property by reason of the incurring of the indebtedness." This language, although involving a public utility of a city, requires an affirmative answer to your first question. Since the land in question was originally acquired from the proceeds of the sale of a bond issue authorized by the county voters for the purpose of "acquiring sites for and equipping public rehabilitation, and related facilities," all the proceeds from the sale, up to and including an amount equal in value to all indebtedness incurred by the county for the purchase of the same, with all interest thereon, whether mature and paid or unmatured, must be paid into the county sinking fund, and the remainder therefore must be paid into the county general fund. It, is, therefore, the opinion of the Attorney General that your first question be answered in the affirmative. All of the Five Thousand Dollars ($5,000.00) received by the county from the sale of land originally purchased with proceeds from a county bond issue approved for the purpose of acquiring said property, must be placed in the sinking fund for the purpose of retiring the bonds issued for the purchase of said property. The affirmative answer to your first question makes it unnecessary to answer your second question. (Marvin C. Emerson)